**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-20575-KMM

ANDRE MEJIA, CHRIS KERTESZ,
and all others similarly situated individuals
pursuant to 29 U.S.C. 216(b),

    Plaintiffs,

v.

COMMERCIAL DRIVER'S LICENSE
SCHOOL, INC., et. al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON PARTIES' JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT AGREEEMENT

This cause came before the Court upon Parties' Joint Motion for Approval of Parties' Settlement Agreement and Stipulated Dismissal with Prejudice ("Motion"). ECF No. [49]. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Honorable K. Michael Moore, United States Chief District Judge, referred the Motion to the undersigned for a Report and Recommendation. ECF No. [51]. The Motion is now fully briefed. Upon consideration of the Parties' submissions and being otherwise duly advised in the premises, the undersigned **RECOMMENDS** that the Motion for Approval of Settlement be **GRANTED**.

### A. PROCEDURAL BACKGROUND

Plaintiffs Andre Mejia ("Mejia") and Chris Kertesz ("Kertesz") (collectively "Plaintiffs") initiated this collective action on February 7, 2020, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, seeking unpaid wages from their former employers—Defendants, The Commercial Driver's License School Inc. ("CDL"), Albert V. Hanley, III ("A. Hanley"), and

1

Michael Hanley ("M. Hanley") (collectively "Defendants"). ECF No. [1]. Plaintiffs' Statement of Claim, filed on March 2, 2020, represented that the total overtime wages at issue were $1,110.92, including liquidated damages. *See* Statement of Claim, ECF No. [25]. Specifically, Mejia claimed that he was entitled to $312.48 in overtime, plus another $312.48 in liquidated damages, totaling $624.96.[1] *Id.* at 2. Kertesz claimed he was owed a total of $242.98 in unpaid wages, and another $242.98 in liquidated damages, totaling $485.96.[2] Plaintiffs also sought an award of attorneys' fees and costs which at that time amounted to $20,071.25 in fees and $660.00 in costs. *Id.* at 3. Defendants responded to Plaintiffs' Statement of Claim by denying that Plaintiffs were owed any wages. ECF Nos. [34] ¶ 3; [39] ¶¶ 1–3. In addition, they noted that Plaintiffs' request for attorneys' fees was unreasonable, exorbitant, and disproportionate to the amount of wages Plaintiffs claim they are owed. ECF No. [34] ¶ 6.

On February 21, 2020, two weeks after filing the Complaint and before the parties were even required to submit a Joint Scheduling Report or the Statement of Claim, Plaintiffs filed their Motion for Conditional Certification of Collective Action (the "Motion to Certify Class"). ECF No. [19]. Plaintiffs' Motion to Certify Class asserted that Defendants' misclassification of their

---

[1] Mejia arrived at this calculation by first finding the total number of overtime hours worked per week. Mejia calculated that he worked a total of seven overtime hours per week. ECF No. [25] at 2. Mejia then determined the overtime rate was $7.44 per hour. *Id.* Mejia multiplied the unpaid overtime rate ($7.44) by the number of overtime hours worked per week (seven), to conclude that he is owed $52.08 of unpaid overtime wages per week. *Id.* Finally, that number, when multiplied by the six weeks that Mejia worked, results in the total amount of unpaid overtime wages, which is $312.48. *Id.*

[2] Kertesz worked the following hours in a six-week period. Week one, 44.5 hours; week two, 43.5 hours; week three, 45.5 hours; week four, 44 hours; week five, 50 hours; and week six, 44.5 hours. Therefore, to calculate the amount of unpaid overtime wages for week one, Kertesz divided his flat pay rate of $700.00 by 44.5 hours to get his hourly pay rate of $15.73 for week one. Because he was not paid an overtime rate for hours in excess of forty, he is owed $7.86 per hour for every overtime hour worked. Kertesz then multiplied the amount owed for each overtime hour by each overtime hour worked in the six-week period to arrive at his final calculation.

driving instructor trainees potentially caused hundreds of employees throughout the United States to suffer overtime wage violations during the past three years. *Id*. at 3. Defendants filed their Response to Plaintiffs' Motion to Certify Class, arguing that Plaintiffs failed to meet the standard for conditional certification and failed to offer any evidence that there are similarly situated persons outside Miami-Dade County. ECF No. [32] at 1–2. Plaintiffs, thereafter, filed their Reply to Defendants' Response. ECF No. [35].

On April 1, 2020, Defendants CDL and A. Hanley filed their Notice of Mootness on the grounds that they served Plaintiffs with offers of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure, for the full amount that Mejia and Kertesz had each listed in their respective Statements of Claim. ECF No. [41] at 2. The Offers of Judgement also included a reasonable amount of attorneys' fees and costs to be determined by the Court. ECF Nos. [42-1] at 2; [43-1] at 2. Thereafter, Plaintiffs each filed a Notice of Acceptance with Offer of Judgment, accepting CDL and A. Hanley's Offers of Judgment. ECF Nos. [42], [43].

Pursuant to this Court's practice in FLSA cases, a settlement conference was scheduled before United States Magistrate Judge Jacqueline Becerra for April 2, 2020. ECF Nos. [29], [44]. Although the merits of the wage claims had been resolved, the issue of attorneys' fees remained, and the parties agreed to proceed with the Settlement Conference but were not able to reach an agreement as to a reasonable amount of attorneys' fees and costs.

On April 21, 2020, the Court entered an Order setting forth the practice required in an FLSA case upon a Rule 68 Offer of Judgment. ECF No. [45]. Specifically, the Order noted that even though there was a Rule 68 Offer of Judgment, the Court was required to make "an independent determination that the Offer of Judgment as accepted represented a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (citing *Hernandez v. R.S*

3

*1040 EZ Inc.*, No. 14-CV-20865, 2015 WL 12780628, at *1 (S.D. Fla. Feb. 26, 2015)) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). The Court ordered Plaintiffs to file a renewed Notice of Acceptance of Offer of Judgment with information regarding their attorneys' fees and costs. *Id.* The Court also ordered that Plaintiffs and Defendant Michael Hanley provide the Court with briefing, not to exceed five pages, on whether Plaintiffs' claims as to Defendant Michael Hanley were moot in light of Plaintiffs' acceptance of Defendants Commercial Driver's License School, Inc. and A. Hanley's Offer of Judgment. ECF No. [46].

In response to the Court's Orders, the parties requested additional time to submit a settlement agreement that would address the outstanding issues for the Court's approval. ECF No. [47]. The Court granted that request, ECF No. [48], and the Parties' Joint Motion for Settlement was filed on April 28, 2020. ECF No. [49]. The Joint Motion for Settlement was filed on behalf of both Plaintiffs and all Defendants, including Michael Hanley. The Joint Motion for Settlement attached as an exhibit a copy of the Settlement Agreement and Release of FLSA Claims ("Settlement Agreement"), which had been fully executed on April 28, 2020. ECF No. [49-1]. The Parties asked the Court to "approve their Settlement Agreement, grant their Motion for Court Approval of FLSA Settlement and For Order of Dismissal with Prejudice, and retain jurisdiction to enforce the terms of the agreement for up to ninety (90) days." ECF No. [49] at 2.

The Settlement Agreement noted that Plaintiffs accepted the Offers of Judgment, but that the matter of attorneys' fees and costs remained to be settled pursuant to the terms of the Settlement Agreement. ECF No. [49-1] at 2. Specifically, as to the attorneys' fees and costs, the Settlement Agreement provided that Plaintiffs' counsel is to receive attorneys' fees and costs in the amount of $15,000.00, paid in three equal installments of $5,000.00. ECF No. [49-1] at 4–5. Specifically, Plaintiffs' counsel is to receive $14,340.00 in attorneys' fees and $660.00 in costs. *Id.* at 5. The Joint Motion for Settlement also included Declarations from each of Plaintiffs' counsel: Jordan

Richards, ECF No. [49-2], Melissa Scott, ECF No. [49-3], and Jake Blumstein, ECF No. [49-4]; and billing records totaling $33,135.00 in attorneys' fees and costs. ECF Nos. [49-2] at 5, [49-3] at 4, [49-4] at 4. Specifically, Jordan Richards' billing records reflect $18,240.00 in attorneys' fees, Melissa Scott's records reflect $5,542.50 in attorneys' fees, and Jake Blumstein's records reflect $9,352.50 in attorneys' fees. *Id*. The Settlement Agreement also included a release of any and all claims that Plaintiffs may have had against Defendants. ECF No. [49-1] at 4-6.

### B. ANALYSIS

The issue before the Court is whether the Settlement Agreement should be approved. It is well-settled that the minimum wage and overtime provisions of the FLSA are mandatory and not subject to negotiation or bargaining between employers and employees. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). However, there are two ways employees can settle a claim against their employer for unpaid minimum wages or overtime pay under the FLSA: (1) if the payment of unpaid minimum wage overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee, if the parties present the district court with a proposed settlement and the court enters an order approving the fairness of the settlement. 29 U.S.C. § 216(c); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). An employee may settle and waive FLSA claims against his employer without the supervision of the Secretary of Labor if: (1) the settlement occurs in an adversarial context; (2) there are issues of FLSA coverage or computations actually in dispute; and (3) the district court enters an order approving the settlement after reviewing the fairness of the settlement. *Id*. at 1354.

In making a fairness determination, courts consider the following factors: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the

probability of a plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Canela v. United Dental Specialist, PLLC*, No. 17-CV-21498, 2017 WL 7794326, at *1 (S.D. Fla. June 30, 2017) (citing *Mason v. Wyndham Vacation Ownership, Inc.*, 6:10-CV-1805, 2012 WL 570060, at *1 (M.D. Fla. Feb. 17, 2012), *report and recommendation adopted*, 6:10-CV-1805, 2012 WL 570037 (M.D. Fla. Feb. 22, 2012)). The "acceptance of a Rule 68 offer of judgment does not relieve the Court of its duty to determine whether the settlement is a fair and reasonable resolution of a bona fide dispute as required by *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1981)." *Scippio v. Peopleready, Florida, Inc.*, 2:18-CV-34-FTM-99CM, 2018 WL 4964636, at *2 (M.D. Fla. Sept. 28, 2018), *report and recommendation adopted*, 2:18-CV-344, 2018 WL 4963739 (M.D. Fla. Oct. 15, 2018).

Here, as to the satisfaction of Plaintiffs' wage claims, Plaintiffs accepted offers of judgment that provided them with a full recovery. Indeed, Plaintiffs received the entire amount of wages they claimed were owed, including liquidated damages. As such, as to Plaintiffs, there can be no question that the Settlement Agreement is fair and reasonable. *See Romeo v. Colonial Imports, Ltd.*, No. 6:16-CV-876-ORL-40GJK, 2016 WL 7644854, at *3 (M.D. Fla. Dec. 15, 2016), *report and recommendation adopted*, No. 6:16-CV-876-ORL-40GJK, 2017 WL 36373 (M.D. Fla. Jan. 4, 2017) (citing *Lynn's Food Stores*, 679 F.2d. at 1354–55); *see also Natera v. Mastercorp of Tenn., Inc.*, No. 6:08-CV-2088-ORL-22DAB, 2009 WL 1515747, at *2 (M.D. Fla. June 1, 2009) (finding "[f]ull recompense of the [FLSA] damage claim is *per se* fair and reasonable").

The Offers of Judgement, however, left the issue of attorneys' fees to be decided by the Court. The procedural posture changed when the parties, after the Offers of Judgment were accepted, agreed to settle their attorneys' fees dispute. In doing so, they entered into the Settlement Agreement and have now submitted the Settlement Agreement to the Court for approval.

Shortly after the matter was referred for a Report and Recommendation, the undersigned set a hearing on the Motion because, as the undersigned noted at the Hearing, the agreed attorneys' fees appeared to be high. During the hearing, Plaintiffs advanced the argument, and thereafter submitted case law, for the proposition that the Court cannot, or perhaps should not, reduce the amount Defendants have agreed to pay Plaintiffs' counsel because the parties had agreed to that amount. ECF Nos. [56], [57]. Based on the argument of counsel and the case law submitted, the undersigned considers two different arguments.

The first argument is that no judicial review is necessary because when a plaintiff receives a full recovery there is no compromise of the FLSA claims and judicial review is only required if there is a compromise of the claims. The degree of judicial oversight, if any, that should apply when there is full satisfaction of an FLSA claim is an open question. *See Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) ("[w]e do not say what, if any, judicial oversight applies under *Lynn's Food* when full satisfaction of the FLSA claim is made"). However, Plaintiffs provided a case demonstrating that at least one district court in this Circuit has concluded that the answer to that question is none. *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) (holding that since plaintiff has been offered full compensation, the matter did not "involve a compromise" and there was no need for judicial scrutiny). However, whether judicial oversight applies in matters where there is a full recovery is not an issue we have to reach. Indeed, although Plaintiffs recovered their wages in full, there was not a full compromise because the Offers of Judgment did not resolve the attorneys' fees and the attorneys' fees are part of the FLSA claims. As such, the undersigned finds that the Court has the obligation to review the Settlement Agreement. Indeed, the parties seem to concede as much as they jointly seek the Court's approval of the Settlement Agreement.

The second argument is that because judicial review is meant to ensure that an employee's rights were not unfairly compromised so as to benefit his counsel, the Court should not reject the settlement of the attorneys' fees because the payment to counsel did not impact the recovery that Plaintiffs obtained. Plaintiffs were compensated in full and the fees settlement was reached after Plaintiffs received the entire amount owed to them. As such, the fee award did not adversely impact Plaintiffs' recovery and there is no evidence that there was any collusion in reaching the agreement on fees. Given that, the Court should not exercise its authority to reject an agreement where the employees' rights were not unfairly compromised to benefit counsel.

To be sure, the FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Thus, there are circumstances in which a court may deem a fee award unreasonable if a plaintiff is "sacrificing a portion of his unpaid wages recovery to fund a plaintiff's attorney's fees." *Arce v. Doral Costa Servs., LLC*, No. 17-CV-22892, 2017 WL 8794710, at *1 (S.D. Fla. Oct. 31, 2017), *report and recommendation adopted*, No. 17-CV-22892, WL 1795441 (S.D. Fla. Jan. 22, 2018). To the extent that judicial review is designed to protect the interests of employees, no such concern is raised by this Settlement Agreement.

First, although the attorneys' fees agreed upon are higher than those the Court may have considered reasonable under a lodestar analysis,[3] the settlement did not impact Plaintiffs' recovery

---

[3] Although pursuant to the terms of the Settlement Agreement Plaintiffs will receive $15,000.00 in attorneys' fees and costs, ECF No. [49-1], the full amount was $33,135.00. In reviewing the attorneys' fees that were submitted, the hourly rates were reasonable. Specifically, Jordan Richards was the lead attorney and requested compensation at a rate of $375.00 per hour. ECF No. [49-2] ¶ 8. Melissa Scott and Jake Blumstein are associate attorneys requesting $250.00 per hour and $225.00 per hour, respectively. *Id.* Those rates are reasonable.

as they recovered their wages, and liquidated damages, in full. In addition, the settlement of the attorneys' fees was negotiated separately and after the Offers of Judgment were extended. As such, the undersigned is not concerned that Plaintiffs' claims were compromised in any way to benefit counsel, nor can any conflict of interest by counsel be identified under this scenario. Setting aside an agreement on attorneys' fees that in no way compromised Plaintiffs' recovery would not serve the interests the FLSA sets out to protect.

Second, although the attorneys' fees are significantly higher than the recovery Plaintiffs sought and received, this alone is not good cause to reject this Settlement Agreement under the facts of this case. For example, the full amount of the attorneys' fees includes time spent on Plaintiffs' attempts to conditionally certify a class, an issue that Plaintiffs pursued before the Offers of Judgement were served. Although the undersigned questioned Plaintiffs' counsel at the hearing as to why the motion to conditionally certify the class was filed before the parties had an opportunity to attend the Court-mandated settlement conference, Plaintiffs responded that there was no prohibition to their doing so (which is correct) and that their strategy was an important part

---

The amount of hours expended, however, were high and a reduction would have been appropriate under a lodestar analysis given: (1) the amount of time expended on the certification issues, (2) the time incurred in administrative (non-legal) or clerical tasks, and (3) the time spent on excessive time billed, and time billed for unnecessary tasks. Counsel spent considerable time researching and drafting their motion to conditionally certify a class *before* they had even served the Complaint on Defendants and *before* they filed the Statement of Claim (which appears to have been filed late). Moreover, the success attained was *only* for the two named Plaintiffs, and although the recovery was complete, it was very early in the litigation. Having three lawyers billing on the matter was also excessive. Given the amount at damages at issue at the time, it was not reasonable to have three lawyers working on the file. Finally, the submitted time entries include clerical tasks for which counsel should not be compensated. For example, there are multiple entries titled "Format: Formatted and Finalized Exhibit . . . ." ECF No. [49-2] at 6, 9–10, as well as entries for preparing civil coversheets or summonses, or reviewing Defense counsels' Notice of Appearance. ECF No. [49-2] at 6, 8, 11–12. Had the Court been tasked to determine the reasonable attorneys' fee, a reduction of seventy percent of the total attorneys' fees would have been recommended bringing the fees to $9,940.50.

9

of obtaining a full recovery for these two Plaintiffs, although no recovery was obtained for any other individual. Although not fully satisfied that the certification issues were critical to the settlement, the undersigned is hard pressed to find that counsel's strategy was an exercise purely designed to increase their attorneys' fees, a practice that the undersigned would not condone. Nevertheless, because the undersigned was not convinced that the litigation on these issues should be recoverable given how early on they were incurred and that no recovery was secured for anyone other than the two Plaintiffs, the undersigned significantly reduced the time spent on this issue when it engaged in the lodestar calculation and still arrived at an amount of attorneys' fees that was much higher than Plaintiffs' recovery. In addition, there was time that was spent on discovery issues as well as the settlement conference, all of which was reasonable and recoverable. *See Brenowitz v. Implant Seminars, Inc.*, No. 17-CV-20184, 2017 WL 3438879, at *5 (S.D. Fla. Aug. 10, 2017) (finding that a contingency fee award that was higher than the plaintiff's recovery was fair given, among other things, that the plaintiff's proposed recovery exceeded the amount of unpaid wages sought). As such, setting aside the Settlement Agreement because it is higher than Plaintiffs' recovery is not warranted when the case involved a number of issues that were unique and would have been recoverable under a lodestar analysis.

Finally, Defendants could have allowed the Court to decide the amount of a reasonable attorneys' fee, but instead, they decided to settle it. To be sure, parties settle disputes for amounts higher (or lower) than a case would otherwise warrant for a myriad of sound reasons. For example, the fact that a prevailing party can recover attorneys' fees in connection with a motion for those fees often weighs on the non-prevailing party in determining if and for what amount to settle a fee dispute. That is a reasonable and appropriate consideration that should not be ignored. In cases where the damages themselves are not high, expending resources that will not be recovered to

vindicate an employers' position may not be in its financial or legal best interest. Those are issues for the employer to decide and should not be lightly disregarded. Moreover, given that the Settlement Agreement only compromised the attorneys' fees, setting it aside could serve to undermine the confidence that the parties should enjoy in reaching a disposition of the matter that had no bearing on Plaintiffs' claims for wages. A disposition reached by experienced lawyers who on the one hand secured a full recovery for their clients, and on the other, put an end to what could have been a much more costly proceeding. The amount of fees being paid may be high but it is not a basis to deny the Motion given that procedural posture and the facts of this case.

Given all the considerations noted above, the undersigned **RECOMMENDS** that the Settlement Agreement be **APPROVED**. It represents a fair and reasonable resolution of Plaintiffs' claims. The Court's obligation to ensure that Plaintiffs' recovery is fair, reasonable and free of collusion is satisfied.

### C. RECOMMENDATION

For the foregoing reasons, it is the undersigned's recommendation that the Court **GRANT** the Parties' Joint Motion for Approval of Parties' Settlement Agreement, **APPROVE** the Settlement Agreement, **DISMISS** the case with prejudice, and retain jurisdiction to enforce the Settlement Agreement for ninety days.

### D. OBJECTIONS

Because the Motion at issue is a joint request and the undersigned is recommending that the Motion be granted, the time period allowed pursuant to Local Magistrate Rule 4(b) and Federal Rule of Civil Procedure 73 will be shortened. The parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Any request for an extension of this deadline must be made within three (3) calendar days

from the date of this Order.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging on appeal the District Judge's Order based on any factual or legal conclusions included in this Report to which the parties failed to object.  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 9th day of February, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**